Date signed March 30, 2009



WENDELIN I. LIPP
U. S. BANKRUPTCY JUDGE

### UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| Stephen C. Sieber, | : | Case No.: 07-21192-WIL |
| | : | Chapter 11 |
| Debtor. | : | |
| | : | |
| David E. Czech, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Adversary Proceeding No.: 08-00119 |
| | : | |
| Stephen C. Sieber, | : | |
| | : | |
| Defendant. | : | |

### MEMORANDUM OF DECISION IN SUPPORT OF ORDER
### DETERMINING DEBT TO BE DISCHARGEABLE

Stephen C. Sieber (hereinafter, the "Debtor" or "Defendant") filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") on November 7, 2007 (the "Petition Date"). On February 14, 2008, David E. Czech (hereinafter, the "Plaintiff") filed a Complaint of David Czech Against Steven [sic] Sieber for Nondischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2) (the "Complaint"). The Debtor filed an Answer to the Complaint on March 11, 2008. After the disposition of several pre-trial

motions, the Court conducted a two-day trial on November 3, 2008 and November 4, 2008. The Court has reviewed the pleadings submitted by the parties, listened to the testimony presented at the trial and examined the exhibits admitted into evidence. For the reasons set forth below, the Court holds that the debt owed by the Debtor to the Plaintiff is dischargeable.

I.     **Facts**

The Complaint is based on a home-improvement agreement dated January 27, 2004 between The SCS Contracting Group ("SCS")[1] and the Plaintiff (the "Agreement"). Pursuant to the Agreement, SCS was to make substantial improvements to a parcel of improved real property owned by the Plaintiff (the "Property"), including redesigning and constructing the front facade of the Property, redesigning the kitchen, finishing the basement, and remodeling and refinishing the remaining interior areas of the Property. The Agreement states that the improvements to be made "shall upgrade the value of the property to the $1,000,000 range." Key provisions of the Agreement include:

> 1.     SCS agrees to provide all the materials and labor for the project as specified.
>
> 2.     Both the Customer (defined as the Plaintiff in the Agreement) and SCS, on the Customer's behalf, shall seek to obtain short term financing for the Customer during the bridge period between when the construction starts and when the house sells. In the event that best efforts are used by both parties and financing cannot be acquired, SCS agrees to defer receipt of the final payment until the sale of the Property.
>
> 3.     SCS shall supply a registered AIA Architect/James Gerrety (the "Architect") to work with the Customer to perfect all of the critical design areas of the project. The Architect, on SCS's behalf, shall provide the Customer with a set of design drawings, that include plan view and/or three-dimensional renderings of the effected areas, which shall be

---

[1] As SCS is an unincorporated entity, the Complaint was filed against the Defendant, who was the sole owner of SCS. This Memorandum refers to the Debtor and SCS interchangeably.

>incorporated into the Agreement. The complete design-drawing phase shall consist of the Architect working closely and diligently with the Customer and SCS to arrive at a completed scope of work.
>
>4. The Customer shall make the final decision on the scope of the work and the amount of money spent.
>
>5. The "cost not to exceed budget" for the project shall be $250,000 for all of the labor and material services required to complete the project.
>
>6. The Customer agrees to pay SCS a retainer of $40,000.00 towards the construction contract. Once the Customer accepts the final design and associated cost, a construction contract shall be provided that shall include all the drawings and specifications agreed upon by the Architect, SCS and the Customer.

The Agreement provides the following deadlines:

> **Starting date for design drawings:** Within 7 days of the execution of this agreement. (The architect shall meet with the owner to acquire information necessary to conceive the design and complete the design drawings.)
>
> **Completion date for design drawings:** Within 10 days of signing date.
>
> **Start Date for Construction**: Within 20 days.
>
> **Completion date for Construction:** Within 60 working days from the beginning of construction, weather permitting.

In contemplation of work to be performed under the Agreement, and pursuant to the Agreement, the Plaintiff paid SCS a $40,000.00 retainer via personal check dated January 27, 2004 (the "Retainer"). It is undisputed that Defendant received and negotiated the Retainer. Thereafter, Plaintiff alleges that SCS failed to perform any work under the Agreement. Consequently, Plaintiff filed an Amended Complaint against the Defendant in the Superior Court for the District of Columbia for fraud, breach of contract, consumer protection violations and rescission (Civil Action 2007-ca-000523-B) (the "Superior Court Action"). The Superior Court Action was stayed upon the filing of the Debtor's bankruptcy case and the litigation between the

parties resumed in this adversary proceeding. The one-count Complaint seeks a determination that the debt owed to the Plaintiff by the Debtor is nondischargeable under 11 U.S.C. § 523(a)(2)(A) and judgment in the amount of $40,000, plus consequential damages including attorney fees, costs and other expenses incurred by the Plaintiff.

**II.    Discussion**

**A.    Dischargeability**

11 U.S.C. § 1141(d)(2) provides that a discharge under Chapter 11 does not discharge an individual debtor from any debt excepted from discharge under Section 523 of the Bankruptcy Code. Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition. 11 U.S.C. § 523(a)(2)(A). To succeed in an action under Section 523(a)(2)(A), a plaintiff must prove the following elements by a preponderance of the evidence:

> (i)   the defendant made a representation;
>
> (ii)  the defendant knew at the time he made the representation that it was false;
>
> (iii) the defendant made a representation with the intent and purpose to deceive the plaintiff;
>
> (iv)  the plaintiff justifiably relied on the false representation; and
>
> (v)   the plaintiff suffered damages as a proximate result of the representation.

*Guaranty Residential Lending, Inc. v. Koep (In re Koep)*, 334 B.R. 364, 371-372 (Bankr. D. Md. 2005) (*citing Spinoso v. Heilman (In re Heilman)*, 241 B.R. 137, 149 (Bankr. D. Md. 1999)). Exceptions to discharge are strictly construed against creditors to protect a debtor's fresh start.

*Id*. at 371.

"'Actual fraud,' as the term is employed in Section 523(a)(2)(A), is defined as 'any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another-something said, done or omitted with the design of perpetrating what is known to be a cheat or deception.'" *In re Heilman*, 241 B.R. at 150 (*quoting Wilcoxon Constr., Inc. v. Woodall (In re Woodall)*, 177 B.R. 517, 523 (Bankr. D. Md. 1995)). Misrepresentation under Section 523(a)(2)(A) can be express or implied and can be any words or conduct that produce a false or misleading impression of fact in the mind of another. *In re Koep*, 334 B.R. at 372; *Parker v. Grant (In re Grant)*, 237 B.R. 97, 113 (Bankr. E.D. Va. 1999). "A false representation is an express misrepresentation, while a false pretense refers to an implied misrepresentation or 'conduct intended to create and foster a false impression.'" *Id.* (*quoting In re Newmark,* 20 B.R. 842, 854 (Bankr. E.D.N.Y. 1982)). The fraud or misrepresentation must have existed at the time of, and been the methodology by which, the money, property or services were obtained. *In re Heilman*, 241 B.R. at150. "Later misrepresentations are irrelevant for purposes of determining dischargeability under Section 523(a)(2)(A)." *Id.* A breach of contract, by itself, does not render a debt nondischargeable under Section 523(a)(2)(A), even when the breach is wrongful. *Id.; see also In re Grant*, 237 B.R. at 112-113. "However, if a debtor enters into a contract with no intent to fulfill the terms of the contract and later defaults, the contract may provide a basis for a nondischargeability claim based on fraud." *Id.*

Intent to deceive under Section 523(a)(2)(A) may be inferred from the circumstances of the particular case, "including whether the defendant knowingly or recklessly made false representations, which she should know would induce the plaintiff to rely on them." *In re Koep*, 334 B.R. at 372; *see also In re Heilman*, 241 B.R. at 150 ("For a breach of contract to result in a

5

nondischargeable debt, the debtor must have misrepresented his or her intention to perform contractual duties, which may be inferred if the debtor failed to begin performance."). Reliance is also based on the circumstances of the case and a plaintiff's reliance must be justifiable rather than reasonable. *In re Koep*, 334 B.R. at 372.

In this case, the Plaintiff alleges that the Defendant obtained the Retainer by false pretenses, a false representation, or actual fraud. Specifically, the Complaint avers that "the Defendant connived to receive $40,000.00 from the Plaintiff, which the Defendant admitted was used for another business of the Defendant, at a time when the Defendant could not and did not intend to perform the services contemplated in the Contract." The only specific instances of fraud alleged in the Complaint are that the Defendant was not licensed in the District of Columbia to perform the services contemplated by the Agreement and that the Defendant used the Retainer for another one of his businesses. Based on these allegations, the Plaintiff argues that the Defendant never intended to do the work contemplated under the Agreement. As further proof of the Defendant's fraudulent intent, the Plaintiff alleges that no work was performed under the Agreement nor were any of the associated services referenced therein ever performed.

The Plaintiff testified at length at the trial. The Plaintiff testified that he made several trips to the District of Columbia's Department of Consumer and Regulatory Affairs to obtain a copy of the Defendant's home improvement license but he was unable to find proof that the Defendant was duly licensed. The Plaintiff testified that his previous attorneys also attempted to get a copy of the Defendant's home improvement license but were unable to do so. At trial, however, the Defendant produced certified copies of Certificates issued by the Government of the District of Columbia Department of Consumer and Regulatory Affairs. The Certificates indicate that The SCS Contracting Group, LP was licensed as a Home Improvement Salesman and Home

Improvement Contractor for the period between April 10, 1996 and December 31, 2006. The Certificates were admitted into evidence and the Court determined that the Defendant was a licensed home improvement contractor at the time of the Agreement.

With regard to the allegation that the Defendant used the Retainer for another one of his businesses, the Plaintiff testified that he met with the Defendant on March 18, 2004. At this meeting, the Plaintiff states that the Defendant said he could not return the Retainer because he no longer had it. The Plaintiff testified that the Defendant told him that the Retainer had been comingled with funds from another one of his businesses and the Defendant offered the Plaintiff the opportunity to invest in his other business. On re-direct examination, the Plaintiff testified that it was at this time that he first thought the Defendant took the Retainer and never intended to do the work under the Agreement. Despite this testimony, however, the Plaintiff admitted to receiving timely design drawings by the Architect as contemplated by the Agreement. The Plaintiff also admitted to participating in several meetings with the Defendant and/or some of the Defendant's employees regarding the work to be performed under the Agreement. Although the Court believes that no actual construction took place at the Property, the Court finds that some services were provided pursuant to the Agreement and the timing of those services coincided with the payment of the Retainer. Further, the Agreement contemplated that the Parties would enter into a subsequent contract after the Plaintiff accepted the final design and associated cost for the project. This never occurred. Design drawings were prepared by the Architect but the final design was never approved by the Plaintiff. Thus, a final contract or agreement was never presented to the Plaintiff.

Based on (i) the fact that the Defendant was a licensed home improvement contractor during the time period in question, (ii) the uncontroverted testimony that some services were

7

provided pursuant to the Agreement, and (iii) the evidence showing that the architectural design drawings were prepared pursuant to the Agreement, the Court finds that the Plaintiff failed to establish the fraudulent intent required under Section 523(a)(2)(A). At most, the Plaintiff demonstrated that the Defendant breached the Agreement. A breach of contract, however, is insufficient to render a debt nondischargeable. *In re Grant*, 237 B.R. at 112-113; *In re Heilman*, 241 B.R. at 150.

Alternatively, the Court determines that the alleged fraudulent representations made by the Defendant and relied upon by the Plaintiff concerned the financial condition of the Defendant. As such, they cannot form the basis for a nondischargeability determination under Section 523(a)(2)(A). Specifically, the Plaintiff and his wife, Beth Ann Wood, testified that the Defendant made the following representations on which he relied: (i) the Defendant represented that SCS had the ability to financially carry the project; (ii) the Defendant represented that SCS had a $3 million line of credit with Wells Fargo; (iii) the Defendant represented that SCS had the financial means to pay its employees for work performed under the Agreement and could wait to be paid from the Plaintiff; (iv) the Defendant represented that SCS had over two hundred employees and that no subcontractors would be used for the project and (v) the Defendant represented that SCS had the ability to complete the project within sixty days.

The Defendant denied making these representations while testifying at the trial. Assuming *arguendo* that these representations were made, they concerned the financial wherewithal of the Defendant to fund and complete the project. In other words, the alleged representations relate to the financial condition of the Defendant. Fourth Circuit precedent makes clear that statements concerning a debtor's financial condition cannot serve as the basis for nondischargeability unless the statements are in writing and all of the other elements of 11 U.S.C.

§ 523(a)(2)(B) are met. *See Blackwell v. Dabney (In re Blackwell)*, 702 F.2d 490 (4th Cir. 1983). Here, the Complaint does not allege, and the facts do not evidence, a representation in writing regarding the Debtor's financial condition to support a finding of nondischargeability under Section 523(a)(2)(B). Because the representations the Plaintiff asserts he relied on concerned the Debtor's financial condition, they are explicitly excluded by the statutory language as a basis for nondischargeability under Section 523(a)(2)(A).

### III.     Conclusion

For the above-stated reasons, the Court finds that the Plaintiff failed to carry his burden of proof under 11 U.S.C. § 523(a)(2)(A). Accordingly, the debt owed to the Plaintiff by the Defendant is dischargeable. A separate order will issue.


cc:     Plaintiff
        Plaintiff's Counsel - John D. Burns, Esq.
        Defendant


**End of Memorandum**